IN THE FEDERAL DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT FERRIS, JODI FERRIS, and A.F., a minor, by her parents,<br>                                 *Plaintiffs*<br><br>        *v.*<br><br>MILTON S. HERSHEY MEDICAL CENTER; CAITLIN J. MALLIS, M.D., IAN M. PAUL, M.D., and JOHN DOE, M.D., physicians; JANE DOE, R.N., JANET DOE, R.N., registered nurses; JOHN ROE and JANE ROE, hospital staff members; JANET ROE and JACK ROE, risk management personnel, personally and in his official capacity; OFFICER RIAN BELL and OFFICER JAKE ROE, Derry Township police officers; and ANGELICA LOPEZ-HEAGY, a social worker, personally and in their official capacities; DAUPHIN COUNTY SOCIAL SERVICES FOR CHILDREN AND YOUTH,<br>                                 *Defendants* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION:<br>NO. 1:12-cv-00442-JEJ<br><br>Complaint filed March 9, 2012<br><br>**Plaintiffs' Response to Defendants Angelica Lopez-Heagy and Dauphin County Social Services for Children and Youth's Motion to Dismiss** |

**Plaintiff's Response to Motion to Dismiss**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................1

   I.  Plaintiffs' Allegations Meet the Legal Standard for Pleading. ........................1

   II.  The Claims Against Defendant Lopez-Heagy Should Not be Dismissed. ......4

     A.   Defendant Lopez-Heagy is not Entitled to Absolute Immunity. ...............5

     B.   Defendant Lopez-Heagy is not Entitled to Good Faith Immunity.............7

     C.  Defendant Lopez-Heagy is not Entitled to Qualified Immunity..................8

     D.  Defendant Lopez-Heagy Violated the Ferrises' Fourteenth Amendment Procedural Due Process Rights.........................................................................10

     E.  Defendant Lopez-Heagy Violated the Ferrises' Fourth Amendment Rights. 13

     F.  Defendant Lopez-Heagy Falsely Imprisoned A.F. .....................................14

     G.  Defendant Lopez-Heagy Committed the Tort of Intentional Infliction of Emotional Distress...........................................................................................15

     H.  Defendant Lopez-Heagy is Liable for Punitive Damages. .........................16

CONCLUSION ....................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 3, 4, 23

*Atkins v. Luzerne County Children and Youth Services of Luzerne County*, 2205

   U.S. Dist. LEXIS 19006 (M.D. Pa. September 2, 2005) ......................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................1

*Brown v. Daniels*, 128 Fed. Appx. 910 (3d Cir. April 25, 2005) ...........................12

*Conley v. Gibson,* 355 U.S. 41 (1957) ....................................................................2

*Ernst v. Children Review Services of Chester County*, 108 F.3d 486 (3d Cir. 2009)

  .............................................................................................................................5

*Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087

   (3rd Cir. 1989) ...................................................................................................7, 9

*Labove v. Lalley*, 809 F.2d 220 (3rd Cir. 1987) ....................................................2, 3

*Manley v. Fitzgerald*, 997 A.2d 1235 (Pa.Cmwlth. 2010) ......................................15

*Miller v. City of Philadelphia* , 954 F.Supp. 1056 (E.D.Pa. 1997)...........................6

*Miller v. City of Philadelphia*, 174 F.3d 368 (3rd Cir. 1999)...................................6

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 555 U.S. 438 (2009)

  .............................................................................................................................2

*Renk v. Pittsburgh*, 641 A.2d 289 (Pa. 1994) ........................................................14

*Rizzo v. Heins*, 520 Pa. 491 (1989) ................................................................... 18, 21

*Rocks v. City of Philadelphia*, 868 F.2d 644 (3d Cir. 1989).....................................4

*Santiago v. Warminster Tp.*, 629 F.3d 121 (3rd Cir. 2010).............................. 17, 18

*Soldal v. Cook County, Ill.*, 506 U.S. 56 (1992) .......................................................13

*Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3d Cir. 1989)....................8

*Williams v. Bitner*, 455 F.3d 186 (3d Cir.2006) .......................................................9

## Statutes

23 Pa. C.S.A. § 6318...................................................................................................7

42 U.S.C. § 1983.......................................................................................................16

## Rules

Fed. R. Civ. P 12(b)(6)..........................................................................................4, 17

Fed. R. Civ. P. 8(a)...............................................................................................1, 17

**INTRODUCTION**

Defendants Dauphin County Social Services and Angelica Lopez-Heagy
have filed a motion to dismiss Plaintiffs' complaint, arguing that Plaintiffs have
failed to state a claim upon which relief may be granted. Their motion should be
denied, since Plaintiffs' complaint sets out a clear factually-based claim against the
Defendant for violation of their constitutional rights.

Plaintiffs do not dispute Defendant Dauphin County's claim that it should be
dismissed as not a person within the meaning of § 1983.

**ARGUMENT**

**I.      Plaintiffs' Allegations Meet the Legal Standard for Pleading.**

Under Fed. R. Civ. P. 8(a), a pleading that states a claim for relief must
contain a short and plain statement of jurisdiction, a short and plain statement of
the claim showing that the pleader is entitled to relief, and a demand for the relief
sought. In stating the claim, a well-pleaded complaint must contain factual
allegations which "must be enough to raise a right to relief above the speculative
level, on the assumption that all the allegations in the complaint are true (even if
doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
(internal citations omitted).

In discussing the applicable legal standard for a motion to dismiss,
Defendants correctly recognize that the court must accept as true the well-pled
allegations in the complaint, and construe them in the light most favorable to the

Plaintiffs. Brief in Support of Defendants' Angelica Lopez-Heagy and Dauphin County Social Services for Children and Youth's Motion to Dismiss at 11 (M.D. Pa. No. 1:12-CV-00442-JEJ Docket #23) (hereinafter "Def. Brief"). The Defendants then assert, however, that "the court may dismiss the claim if it appears beyond a reasonable doubt, that Plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief." Def. Brief at 11.

This second assertion, which Defendants base on the Third Circuit's decision in *Labove v. Lalley*, 809 F.2d 220 (3rd Cir. 1987), misstates the rule of that case. *Labove* does not permit a court to employ a "reasonable doubt" standard, as Defendants suggest, nor does it require Plaintiffs to show that they can prove their alleged set of facts – or any set of facts – in order to prevail against a motion to dismiss. Instead, *Labove* merely recites the now-obsolete "no-set-of-facts" pleading standard of *Conley v. Gibson*, that a motion to dismiss is proper "if it appears beyond doubt that the plaintiffs can prove *no set of facts* in support of their claims which would entitle them to relief." *Labove*, 809 F.2d at 221-22, quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (emphasis added). The rationale of *Labove* has been undercut by *Twombly*, which abrogated Conley's "no-set-of-facts" standard. See *Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 555 U.S. 438, 456 (2009) (noting that the Court rejected *Conley*'s "no-set-of-facts"

pleading standard in *Twombly*). Motions to dismiss are judged on the sufficiency of pleading, not on any premature evaluation of evidentiary proof.

After *Twombly*, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Twombly,* 550 U.S. at 570. Conversely, a motion to dismiss for failure to state a claim is only proper "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 662, and will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

*Twombly* does not require that Plaintiffs show that they can prove their alleged set of facts. Instead, the only inquiry for the judge is whether the complaint is well-pleaded, based on "the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. Thus, under *Twombly*, Defendants' reliance on the standard in *Labove* is erroneous. So long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face,'" *Iqbal*, 556 U.S. at 678, the complaint will survive a motion to dismiss.

Applying the correct legal standard to this case, the Ferrises' complaint may only be dismissed if it fails to allege facts which, assumed at this stage to be true, "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## II.    The Claims Against Defendant Lopez-Heagy Should Not be Dismissed.

When considering a defendant's motion to dismiss under FRCP 12(b)(6), it is vital that the Court "accept as true and view in a light most favorable to the plaintiff all allegations made in the complaint." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

In her brief supporting her motion to dismiss, Defendant Lopez-Heagy has put forward numerous arguments as to why she should be dismissed from this case. But they all boil down to one thing: her version of the facts that occurred at the hospital on the afternoon of June 27, 2010, is markedly different from the facts alleged by the Ferrises. And at this stage, it is the Ferrises' allegations that are at issue, not Lopez-Heagy's. In Lopez-Heagy's version of events, she acted reasonably and in accord with the law. In the Ferrises' version, she acted not only

unreasonably and illegally in investigating the family, but totally outside the bounds of what reasonable people would normally expect.

### A.   Defendant Lopez-Heagy is not Entitled to Absolute Immunity.

Defendant Lopez-Heagy claims that she has absolute immunity because her actions "were consistent with petitioning, formulating and making recommendations to the Court of Common Pleas of Dauphin County and thus, she is entitled to absolute immunity." Def. Brief at 17. However, this is facially an incomplete, and thus, wholly inaccurate view of her actions.

As the Third Circuit held in *Ernst v. Children Review Services of Chester County*, 108 F.3d 486, 497, n.7 (3d Cir. 2009), a case heavily relied on by Defendant, absolute immunity does not extend to "investigative or administrative actions taken by child welfare workers outside the context of a judicial proceeding." Instead, such immunity is reserved for social workers when actually petitioning the court, "because those actions are analogous to the functions performed by state prosecutors, who were immune from suit at common law." *Id*. at 493. The actions taken by Defendant Lopez-Heagy at the hospital the afternoon of June 27, leading up to Lopez-Heagy summoning the police to take custody of the newborn, are not those of a petitioning prosecutor, but those of an investigating social worker.

The Ferrises allege that Defendant Lopez-Heagy twice told Jodi at the hospital that she was there to conduct an investigation (¶¶ 83, 85). Defendant Lopez-Heagy's unlawful actions were all taken before she prepared or filed any petition with the court, and before she even knew that a petition would need to be filed.

It was not until Jodi Ferris began questioning Defendant Lopez-Heagy concerning the nature of the allegations that the social worker first mentioned calling the police to take custody of the newborn (¶ 89). Threats made in the middle of an investigation that hint of a future petition being filed are not clothed with the same immunity as the actual preparation or filing of a juvenile petition.

*Miller v. City of Philadelphia*, 174 F.3d 368 (3rd Cir. 1999), is instructive in this regard. In that case, the investigating social worker claimed absolute immunity. The district court held that his tortious conduct took place during the investigative phase of the child custody proceeding, *Miller v. City of Philadelphia*, 954 F.Supp. 1056, 1063 (E.D.Pa. 1997), and denied absolute immunity. The Third Circuit agreed: "As we recognized in *Ernst*, absolute immunity does not extend to investigative or administrative acts." *Miller*, 174 F.3d at 376 n. 6.

In *Miller*, the investigating social worker did not actually file the petition; he collected data and then handed it on to a prosecutor. But in this case, the facts as alleged by the Ferrises make it clear that Defendant Lopez-Heagy told them twice

- 6 -

that she was doing an "investigation." She vaguely described "allegations" that had been made regarding "refusing medical treatment" (¶ 91-92). She requested information on Jodi's religious beliefs and how they influenced her decisions on medical treatment (¶108). She stated that "this was an unusual case because 'there is no neglect or abuse,' but that she still had to investigate and had to have Scott and Jodi sign a safety plan because of the call made to their office" (¶112). She stated that she was going to require Jodi to sign a safety treatment plan agreeing to everything that the hospital staff was going to do to the baby (¶ 113).

These are the actions of an investigator, not a prosecutor. Any action she took relative to the petition was done on the following day. She was acting as an investigator throughout all of the relevant times alleged in the complaint. Defendant Lopez-Heagy is not entitled to absolute immunity.

### B.    Defendant Lopez-Heagy is not Entitled to Good Faith Immunity.

Defendant briefly argues that under the Child Protection Services law, 23 Pa. C.S.A. § 6318, she "has full good faith immunity from civil liability under Pennsylvania law. 23 Pa. C.S.A. § 6318." Def. Brief at 18.

This issue has already been dealt with in a case against Dauphin County twenty-three years ago. The Third Circuit in *Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087, 1091 (3rd Cir. 1989), ruled that "Even assuming that this statute extends to officials such as [the social workers],

who are conducting, rather than cooperating with, an investigation, *state law* cannot immunize government employees from liability resulting from their violation of *federal law*." (Emphasis added.) See also *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 726 (3d Cir. 1989) (To assert successfully a defense of qualified good faith immunity against a § 1983 claim, a state actor must establish that his conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

The Ferrises' allegations in the complaint demonstrate the violations of federal law by Defendant Lopez-Heagy, as argued throughout this response. But the most telling allegation reflecting Lopez-Heagy's bad faith is that when, after hours of Lopez-Heagy badgering her, Jodi finally agreed to fully cooperate and sign the safety plan, Lopez-Heagy stated, "No, I've been here three hours working on this case, and I'm not waiting any longer…That window has closed" ( ¶117, 127). Her attitude is clear from this statement: the issue is not protection of the child any more, but retaliation against a mother who has not simply fallen in line with the bureaucratic systems of the state. No form of immunity protects such actions.

**C.    Defendant Lopez-Heagy is not Entitled to Qualified Immunity.**

Determining whether qualified immunity applies is a two-step process. First, "the court must determine whether the facts alleged show that the defendant's

conduct violated a constitutional or statutory right." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir.2006). If the court finds that a defendant violated a constitutional or statutory right, then "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'" *Id.*

Defendant Lopez-Heagy begins by stating that, for the purposes of this motion, "The initial inquiry whether Plaintiffs allege deprivation of actual constitutional rights and whether that right was clearly established… will be conceded." Def. Brief, p. 19. Her concession is in accord with Third Circuit precedent, which has held previously that social worker investigations are subject to the Fourth Amendment. In *Good*, the Third Circuit specifically held that searches and seizures by social workers investigating abuse or neglect are subject to the strictures of the Fourth Amendment, and that the law was clearly established when the events in that case took place in 1987. 891 F.2d at 1092.

But Defendant Lopez-Heagy then makes a conclusory leap to state, "an objectively reasonable official would believe that the actions taken were legal and not violative of Plaintiffs' rights." Def. Brief at 20. This is inaccurate.

The question is whether, viewing the facts in the light most favorable to the Plaintiff, a reasonable social worker would have involved the police in seizing the child. The answer is no. Jodi was not refusing treatment for her child, nor was she refusing to cooperate with the social worker; she was just trying to get information

and legal counsel. Defendant Lopez-Heagy even acknowledged to Jodi that this was "an unusual case" because "there is no neglect or abuse" (¶ 112). No objectively reasonable official would agree that, given the facts as alleged in the complaint, it was reasonable for a social worker to be involved in removing custody of A.F. from Jodi and Scott.

Defendant Lopez-Heagy argues that she "acted consistent with the law." Def. Brief at 20. This is incorrect. As we demonstrate below, her actions during the investigation Sunday afternoon were clearly unconstitutional and no objectively reasonable official would have violated the Ferrises' rights as she did. She is not entitled to qualified immunity.

### D. Defendant Lopez-Heagy Violated the Ferrises' Fourteenth Amendment Procedural Due Process Rights.

In her arguments on the Ferrises' Fourteenth and Fourth Amendment claims, Defendant Lopez-Heagy continually makes reliance to the petition and affidavit filed with the Court of Common Pleas to contend that her actions were objectively reasonable. There is no need to even analyze this slanted counter-statement of the facts in the context of a motion to dismiss. It is significant to note, however, that when the state judge heard both sides of the story approximately two hours after he first received the defendant's pleading, he reversed his prior order and returned immediate custody to the parents. That is probably the best evidence as to which

version of the facts is more credible—if there was any merit to the Defendant's effort to have this Court engage in premature fact-finding.

The issue in the Defendant's arguments regarding Fourteenth Amendment procedural due process claim is the same as discussed in the section above on qualified immunity: was the Defendant's conduct reasonable? Jodi Ferris in her complaint alleges that she never refused medical care for A.F. (¶¶ 102, 109), that she told Defendant Lopez-Heagy that she would cooperate (¶ 90), that she would allow A.F. to stay in the hospital for observation (¶ 79),that she would consider signing a safety plan once either her husband or her attorney had a chance to look at it (¶¶ 114, 116), and finally that she would sign the safety plan even though Defendant Lopez-Heagy had never shown it to her (¶¶ 126-127). There was no emergency that would justify A.F.'s seizure. Instead, her seizure was based on Defendant Lopez-Heagy's erroneous view that when a mother of a newborn asks questions, she is refusing treatment. This Defendant should have risen above her preference for subservient parents and looked to the objective medical facts. A.F. was suffering no medical emergency condition. Jodi had taken no action to place her daughter at risk. Jodi had refused no necessary treatment for A.F. Jodi even ultimately agreed to sign the safety plan that Defendant Lopez-Heagy had been pushing on her for hours, but Defendant Lopez-Heagy determined "That window has closed" and initiated action that resulted in A.F. being seized. It is clear that

this Defendant was looking to correct what she perceived as insubordinate questions rather than any desire to protect A.F. from an unmet medical emergency need.

Defendant cites *Brown v. Daniels*, 128 Fed. Appx. 910 (3d Cir. April 25, 2005) and *Atkins v. Luzerne County Children and Youth Services of Luzerne County*, 2205 U.S. Dist. LEXIS 19006 (M.D. Pa. September 2, 2005), to counter the Ferrises' assertion that she violated their Fourteenth Amendment procedural due process rights. In both of these cases, the court held that "in emergency circumstances which pose an immediate threat to the safety of a child," the state may temporarily seize a child, as long as there is a prompt post-deprivation hearing. Plaintiffs agree that this is a correct statement of the law. Our contention is precisely that a reasonable social worker in Defendant's position would have recognized that there were no emergency circumstances, and nothing that posed an immediate threat to A.F.'s safety. The Court in *Brown* rightly called the taking of a child an "extraordinary" situation. *Id.* at 915. But Defendant came in to an *ordinary* situation – a mother concerned about what medical treatment was being given to her newborn and a normal desire to go home with her healthy baby. It was this Defendant who–in her statements to the police and to the Court of Common Pleas—converted this situation into something that didn't exist—a mother refusing necessary medical treatment for a newborn.

- 12 -

Defendant makes much of the fact that Judge Hoover accepted her petition to name A.F. as a dependent child. Based on the allegations in her petition, which present a situation much different from that alleged in Plaintiff's complaint, the Judge did indeed issue a custody order *ex parte* – an order that was overturned just an hour later when the Ferrises showed up in court and had custody of A.F. immediately returned to them. At the adjudication a month later, the court dismissed the petition over the hard-fought objection of Dauphin County CYS.

### E.   Defendant Lopez-Heagy Violated the Ferrises' Fourth Amendment Rights.

Similarly, in the Fourth Amendment claim, the main question is "Was the Defendant's conduct reasonable when viewing the facts in the light most favorable to the Plaintiffs?" Defendant cites numerous cases for the proposition that "reasonableness is still the ultimate standard under the Fourth Amendment." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 71 (1992). The Ferrises do not dispute this statement of the law, nor do they dispute that in cases where there are emergency circumstances, state officials may temporarily deprive a parent of custody without a court order. However, the allegations in the complaint demonstrate the completely unreasonable nature of A.F.'s seizure. As noted above, there was no emergency in this case. Viewing the allegations in the complaint as true, Jodi Ferris never refused medical treatment for A.F. (¶¶ 102, 109). She stated that her child could stay overnight for observation (¶ 79). She even finally agreed to

- 13 -

cooperate with a safety plan put forward by Defendant Lopez-Heagy (¶¶ 126-127).
But none of this was satisfactory for the Defendant, who unreasonably had A.F.
seized.

Without Defendant Lopez-Heagy's completely unreasonable conduct and
statements, Officer Rian Bell would not have taken custody of A.F. Without
Defendant Lopez-Heagy's completely unreasonable conduct and statements, Judge
Hoover would not have issued the *ex parte* order allowing an officer to take
custody of A.F. Defendant cannot conduct an investigation that comes to a
completely unreasonable conclusion that leads to first the police and then the court
ordering seizure of a child without the child being in danger, and then stand back
and say, "I had nothing to do with it."

### F.    Defendant Lopez-Heagy Falsely Imprisoned A.F.

In the false imprisonment claim, as in the Fourth Amendment claim
discussed immediately above, while Defendant Lopez-Heagy did not physically
take emergency custody of A.F., it was due to her investigation and statements to
Officer Rian Bell that she obtained custody.

"The elements of false imprisonment are (1) the detention of another person,
and (2) the unlawfulness of such detention." *Renk v. Pittsburgh*, 641 A.2d 289, 293
(Pa. 1994). Contrary to Defendant's arguments in her motion to dismiss, her
actions in obtaining custody of A.F. were not lawful. She was fully aware that

there was no emergency, that Jodi Ferris had not refused medical treatment, and that Jodi was in fact willing to sign a safety plan to cooperate with the hospital's procedures. But she went ahead and called Officer Bell and persuaded him that A.F. was somehow "suffering from illness or injury or [is] in imminent danger from her surroundings, and that her removal is necessary." Exhibit 2 to Defendant's Motion. Defendant's actions violated the Ferrises' Fourth Amendment rights by removing A.F. from their custody without an emergency being present, which is unlawful.

Again, Defendant Lopez-Heagy makes reference to Judge Hoover's *ex parte* order of Monday morning, but ignores the fact that within less than two hours, that order was voided and the Ferrises received custody of A.F. back. At the adjudication hearing, the Ferrises were again vindicated and the dependency petition was dismissed.

### G.   Defendant Lopez-Heagy Committed the Tort of Intentional Infliction of Emotional Distress

"The elements of intentional infliction of emotional distress are: (1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa.Cmwlth. 2010).

Defendant argues that the Ferrises' claim of intentional infliction of emotional distress should be dismissed because her actions were reviewed by

Officer Bell and Judge Hoover and were "approved." Def. Brief at 29. This is incorrect.

First, Defendant Lopez-Heagy's "actions" in investigating Jodi and Scott Ferris were not reviewed and approved by Officer Bell. Instead, the complaint alleges that Defendant talked to Officer Bell and asked him to take custody of A.F. without judicial authorization. The fact that he then decided to do so has nothing to do with him "approving" Defendant's actions; it merely intimates that he accepted her story. Similarly, Judge Hoover's accepting the dependency petition and issuing an *ex parte* custody order does not "approve" the actions of Defendant Lopez-Heagy as alleged by the Ferrises.

Second, even if both Officer Bell and Judge Hoover reviewed Defendant Lopez-Heagy's actions, her affidavit to the Court of Common Pleas the next morning (and by implication her statements to Officer Bell) is significantly different from what the Ferrises allege happen in the hospital room. And at this stage in litigation, it is the Ferrises' allegations to which deference must be given.

### H.      Defendant Lopez-Heagy is Liable for Punitive Damages.

Defendants seek dismissal of the Ferris's punitive damages claims on four separate grounds: first, that the Dauphin County Social Services are insulated from punitive damages under § 1983; second, that Defendant Lopez-Heagy cannot be sued for punitive damages in her official capacity; third, that any facts giving rise

- 16 -

to a punitive damages claim against Defendant Lopez-Heagy in her individual capacity have not been well-pled under Fed. R. Civ. P. 8(a); and fourth, that Defendant Lopez-Heagy's actions were not outrageous because they were subsequently reviewed and "approved" by a police officer and a judge. With regards to the Defendants' first and second objections, the Plaintiffs ask this Court to construe our request for punitive damages to be solely against Defendant Lopez-Heagy in her individual capacity.

Dismissal under FRCP 12(b)(6) is only appropriate in this case if the Ferrises fail to allege all the elements of a claim and rely on improper conclusions rather than well-pled facts. If the complaint passes these two standards, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Tp*., 629 F.3d 121, 130 (3rd Cir. 2010) (internal citations omitted).

The Defendants assert that the Ferrises' complaint "lacks factual allegations that Defendant Lopez-Heagy acted with malicious, wanton, reckless, willful or oppressive action," and that the Ferrises merely "plead a formulaic punitive damages claim which does not surpass the *Santiago v. Warminster Twp.* test." Def. Brief at 32. A closer examination of the Ferrises' complaint clearly shows that there are sufficient, well-pled factual allegations that support a claim of punitive

damages against Defendant Lopez-Heagy. Thus, a dismissal of these claims against Defendant Lopez-Heagy would be improper.

Applying the three-part test in *Santiago*, the first step is to identify the elements that the Ferrises must plead to state a claim for punitive damages. *Santiago*, 629 F.3d at 130. Under Pennsylvania state law, a court may award punitive damages if the Defendant committed conduct which was "malicious, wanton, reckless, willful, or oppressive." *Rizzo v. Heins*, 520 Pa. 491, 555 (1989).

Second, this court would then identify any "allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Santiago*, 629 F.3d at 130. The Defendants claim that the complaint offers only "a formulaic punitive damages claim," (Def. Brief at 32) but fail to identify which allegations are problematic.

The Plaintiffs' complaint clearly meets these standards. It sets forth numerous factual allegations against Defendant Lopez-Heagy which, if true, would prove that she engaged in conduct which was "willful," "malicious," and "oppressive." *Rizzo*, 520 Pa. at 555.

The events alleged by the Ferrises tell of a social worker who took custody of a child on the day she was born using a law that requires a showing of an unmet medical emergency. This social worker knew there was no emergency. She knew that the parents did nothing more than ask questions. She knew that the parents had

not refused any treatment. She even knew that the mother agreed to her improper demand to sign a safety plan—giving up the mother's entirely reasonable request that her husband or lawyer first be allowed to read the plan. Yet, despite all of these things, the social worker made knowingly false representations to a police officer to get him to seize this child and to evict this mother from the hospital. In the mind of this social worker, she was engaged in a power struggle, not in an effort to protect a child from a real medical emergency. Such an episode is a willful, malicious abuse of her power as a social worker.

Plaintiffs have alleged facts which permit a plausible inference that the Defendant's conduct in removing the newborn A.F. from her parents was outrageous. The specific allegations that reveal this story include: the Plaintiffs allegation that Defendant Lopez-Heagy entered Mrs. Ferris's hospital room shortly after A.F. was born and told Mrs. Ferris that she was there to investigate but would not disclose any specific allegations (¶¶ 82-85). The Defendant accused the Ferris's of "refusing to provide medical treatment," but failed to give any specific examples (¶¶ 91-92, 96), and insisted that the Ferrises sign a safety plan even though she had told the Ferrises that "there is no neglect or abuse" (¶ 112).

Plaintiffs allege that when Mrs. Ferris told the social worker that she was not comfortable proceeding without knowing the allegations, the Defendant told Mrs. Ferris, "Since you're not going to cooperate, I'll just go and call the police and we

can take custody of the baby" (¶¶ 88-89); that the Defendant told Mrs. Ferris that if she did not agree to all the hospital's procedures, the Defendant would call the police and take custody of the baby (¶ 98); that when Mrs. Ferris declined to elaborate at length as to whether her decisions were religiously-motivated, the Defendant threatened to call the police and have them take custody of the baby (¶¶ 108, 110-11); that the Defendant told Mrs. Ferris that she must sign the safety plan agreeing to everything that the hospital was going to do, or the Defendant would call the police to have them take custody of the baby (¶ 113); that when Mrs. Ferris said she would not be comfortable signing anything without talking to an attorney first, the Defendant refused to wait and stood up to call the police, (¶¶ 114-15); and that when Mrs. Ferris asked to wait to sign the safety plan until her husband returned, the Defendant said that she was "not waiting any longer" and that she would "call[] the police and hav[e] them take custody of the baby" (¶¶ 116-17).

The Ferrises allege that the Defendant returned to Mrs. Ferris' hospital room, shortly after A.F. was born, accompanied by two uniformed police officers and several hospital staff, and told Mrs. Ferris that she was taking custody of A.F. because Mrs. Ferris would not sign a safety plan (¶ 124-25). Mrs. Ferris had never seen any safety plan, but when she asked to see a copy and for a pen so that she could sign it, the Defendant refused, saying "that window has closed" (¶¶ 126-27). The Defendant then immediately removed A.F. from the custody of her parents,

and authorized the hospital staff to perform medical procedures on A.F., over the Ferrises' objection (¶ 130).

These specific factual allegations – assumed to be true for purposes of this motion, and viewed in the light most favorable to the Ferrises – support a plausible inference that Defendant Lopez-Heagy's conduct was both "outrageous" and also either "malicious, wanton, reckless, willful, or oppressive." *Rizzo*, 520 Pa. at 555. It is outrageous for the Defendant to come into Mrs. Ferris's room shortly after A.F.'s birth and ask probing questions about the treatment of her newborn; to withhold the allegations; to threaten to call the police unless Mrs. Ferris answered questions about her religious beliefs; to forbid Mrs. Ferris from consulting with an attorney or her husband; and to take emergency custody of the child without prior judicial approval, when the parent had never refused any necessary medical treatment.

The outrageousness of the Defendant's actions is not cured by her mere assertion that a judge or police officer subsequently "approved" her actions. While the court did accept the Defendant's *post hoc* filing of a dependency petition and retroactively approved temporary custody *ex parte* based on the Defendant's affidavit, the court then promptly returned custody to the family as soon as they appeared for their post-deprivation hearing. Furthermore, the representations that the Defendant made in her petition are vastly different from the allegations in the

*complaint*, and the sole question here is whether the allegations in the *complaint* – if assumed to be true and viewed in the light most favorable to the Ferrises – permit a plausible inference that the Defendant's actions were outrageous.

Nor is there any indication that Officer Bell conducted his own investigation, in which he "approved" of Defendant's actions. Instead, Plaintiffs have alleged that the officer relied solely upon the Defendant's statements to him (¶ 121). Whether the officer actually did this and should have done it are questions for the jury, but at this stage, the Ferrises allege that the Officer merely accepted her representations at face value, and took custody of A.F.

The above-alleged facts permit a plausible inference that the Defendant's misconduct was willful and malicious. Mrs. Ferris asked the Defendant about the specific allegations, and the Defendant refused to answer.  Mrs. Ferris asked the Defendant what specific necessary medical treatment she had neglected to provide, and the Defendant would not or could not tell her. Mrs. Ferris asked for an opportunity to read the safety plan, and to consult her husband and an attorney, but the Defendant refused to allow Mrs. Ferris to sign the safety plan, saying "It's too late for that." Her attitude was rude and offensive in the extreme, and her oft-repeated ultimatum – "agree or I will take your child" – was threatening in the extreme. The content, context, and frequency of these threats permit a plausible inference that the Defendant sought to willfully interfere with the Ferris's

constitutional and legal rights, or at the very least willfully sought to influence them to not exercise those rights.

The Ferrises have alleged that the Defendant acted oppressively. The Ferrises have identified no fewer than six separate occasions, all within the span of a few hours, when the Defendant threatened to take A.F. unless the Ferrises did as she demanded. The Defendant sought to substitute her own judgment for that of the Ferrises, and used the threat of taking their newborn child to undermine the Ferrises' choices. The inherent nature of this threat – made against a mother concerning her newborn, helpless child – coupled with its frequency and forcefulness, permits a plausible inference that the Defendant's actions were oppressive.

In short, this is not a case where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S at 679. The Plaintiffs have alleged many facts which, if presumed to be true and viewed in the light most favorable to the Ferrises, make out a colorable, plausible claim that the Defendant's actions were outrageous, willful, malicious, and oppressive.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss the claims against Defendant Angelica Lopez-Heagy should not be dismissed.

Dated this 12th day of June, 2012.

Respectfully submitted,

/s/ Darren A. Jones
Michael P. Farris
James R. Mason, III
Darren A. Jones
Home School Legal Defense Association
P.O. Box 3000
Purcellville, VA 20134
(540) 338-5600
Fax: (540) 338-1952
*Counsel for Plaintiffs*

**Certificate of Compliance with L.R. 7.8**

Pursuant to Local Rule 7.8, the undersigned certifies that this brief complies with the length limitations of local rules. This Court has granted permission to file our response not exceeding 5500 words.

Exclusive of the tables, cover sheet, and certifications, the brief contains: 5492 words according to Microsoft Word's word count feature.


/s/ Darren A. Jones
Darren A. Jones
Home School Legal Defense Association

## Certificate of Service

I hereby certify that I am this day June 12, 2012 serving a copy of the foregoing

upon the person(s) and in the manner indicated below, which service satisfies the

requirements of the Federal Rules of Civil Procedure, ECF notification as follows:

Wendi D. Barish, Esquire
Thomas Geroulo, Esquire
Weber Gallagher Simpson Law Offices
2000 Market Street, 13th Floor
Philadelphia, PA 19103
*Counsel for Defendant Police Officers Bell and Roe*

Thomas M. Goutman
Kim Kocher
Christopher E. Ballod
White and Williams LLP
1650 Market Street
One Liberty Place, 18th Floor
Philadelphia, PA 19103
*Counsel for Defendant Hershey Medical Center, Dr. Mallis, and Dr. Paul*

Donald L. Carmelite
Marshall, Dennehey, Warner, Coleman & Goggin
4200 Crums Mill Road
Suite B
Harrisburg, PA 17112
John P. Gonzales
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103
*Counsel for Defendant Dauphin County Social Services and Angelica Lopez-Heagy*

/s/ Darren A. Jones

- 26 -

Darren A. Jones
Home School Legal Defense Association