**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT FERRIS, JODI FERRIS, and | : | |
| A.F., a minor, by her parents, | : | |
| | : | |
| Plaintiffs, | : | No. 1:12-cv-00442 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MILTON S. HERSHEY MEDICAL | : | |
| CENTER; CAITLIN J. MALLIS, M.D., | : | |
| IAN M. PAUL, M.D., and JOHN DOE, | : | |
| M.D., physicians; JANE DOE, R.N., | : | |
| JANET DOE, R.N., registered nurses; | : | |
| JOHN ROE and JANE ROE, hospital staff | : | |
| members; JANET ROE and JACK ROE, | : | |
| risk management personnel, personally and | : | |
| in his official capacity; OFFICER RIAN | : | |
| BELL and OFFICER JAKE ROE, Derry | : | |
| Township police officers, and ANGELICA | : | |
| LOPEZ-HEAGY, social worker, personally | : | |
| and in her official capacities; and | : | |
| DAUPHIN COUNTY SOCIAL SERVICES | : | |
| FOR CHILDREN AND YOUTH, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM & ORDER**

**November 30, 2012**

## I.    INTRODUCTION

By Memorandum and Order (doc. 45) dated August 22, 2012, we dismissed

the Plaintiffs' constitutional claims against Defendants Penn State Milton S.

Hershey Medical Center, Ian M. Paul, M.D., Caitlin J. Mallis, M.D., and Colin

MacNeill, M.D. (the "HMC Defendants"). We concluded that the Plaintiffs had failed to state facts establishing that the HMC Defendants had accomplished or in any way been responsible for the alleged violation of the Plaintiffs' constitutional rights. However, consistent with the Third Circuit's mandate in *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251-52 (3d Cir. 2007), we granted the Plaintiffs leave to amend their claims to the extent that facts exist which demonstrate a constitutional right to relief, consistent with our opinion. (Doc. 45). On September 12, 2012, the Plaintiffs' filed an Amended Complaint (doc. 46) consistent with the leave granted by this Court. The HMC Defendants have now renewed their Motion to Dismiss. (Doc. 48). The Motion has been fully briefed (docs. 52, 60) and is thus ripe for our review. For the reasons that follow, we will grant in part and deny in part the HMC Defendants' Motion.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. TIeman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that

defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

### III.   FACTUAL AND PROCEDURAL BACKGROUND

In accordance with the standard of review applicable to a Motion to Dismiss, the following facts are derived from the Plaintiffs' Amended Complaint (doc. 46) and viewed in a light most favorable to the Plaintiffs. Plaintiffs Scott and Jodi Ferris are the parents of Plaintiff A.F. (Doc. 46, ¶ 6). Defendant Milton S. Hershey Medical Center ("HMC") is a state institution and federal fund recipient located in Hershey, Pennsylvania. (*Id.* ¶ 7). Defendants Ian M. Paul, M.D., Caitlin Maillis, M.D., Colin MacNeill, M.D., John Doe, M.D., Jane Doe, R.N., Janet Doe, R.N., Hospital Staffer John Roe, Hospital Staffer Jane Roe, and Risk Management Personnel Jack Roe were employees of HMC at all times relevant to this action. (*Id.* ¶¶ 8-15). Defendant Angelica Lopez-Heagy is an employee of Dauphin County Social Services for Children and Youth ("DCSSCY"). (*Id.* ¶ 17).

On June 27, 2010, at 7:00 a.m., Mrs. Ferris went into labor; when the Ferris's midwife advised that she may not arrive in time, an ambulance took Mrs. Ferris to HMC, where she gave birth to A.F. in the ambulance just outside of the emergency room door. (*Id.* ¶¶ 21-29). Defendant Nurse Jane Doe thereafter administered an oxytocin shot to Mrs. Ferris against her objection. (*Id.* ¶¶ 35-40). Defendant Nurse Jane Doe also attempted to insert an intravenous ("IV") drip in Mrs. Ferris's arm, but Mrs. Ferris protested. (*Id.* ¶¶ 43-56).

5

Questions about A.F.'s health were ignored by the HMC Defendants and were instead met with expressions of hostility toward the use of midwives. (*Id.* ¶¶ 32, 57-59, 66). Mrs. Ferris renewed her questions about A.F.'s condition, to no avail. (*Id.* ¶ 42). Some time later, Defendant Nurse Janet Roe advised that A.F. could soon be discharged. (*Id.* ¶ 61). Shortly thereafter, Defendant Dr. MacNeill stated that A.F. was "very sick" and would need to stay in the hospital. (*Id.* ¶ 63). At 11:40 a.m., Defendant Hospital Staffer Jane Roe stated again that the baby is doing fine and could go home in "no time." (*Id.* ¶ 65).

Defendant Hospital Staffer John Roe then advised that A.F. would need to stay at HMC for 48-72 hours, stating that while the baby was fine and healthy, the law requires hospitals to observe newborns for 48 hours. (*Id.* ¶¶ 66-69). When asked which statute requires this, Defendant Roe told the Plaintiffs to "get that from Risk Management." (*Id.* ¶ 70). Defendant Risk Management Personnel Janet Roe told Mrs. Ferris that A.F. was "healthy" and that she did "not anticipate any health problems with her over the next 48-72 hours" but that A.F. needed to stay for observation. (*Id.* ¶ 72). Defendant Risk Management Personnel Jack Roe stated that it was policy to "keep babies like this" for 48-72 hours. (*Id.* ¶ 73).

Thereafter, a guard nurse remained stationed inside Mrs. Ferris's room continuously. (*Id.* ¶ 77). The Plaintiffs believe that the nurse was present to ensure

that neither Mrs. Ferris nor A.F. could leave the room or the hospital. (*Id.* ¶ 78). When Mrs. Ferris opened the door to ask hospital staff about procedures for a 24-hour stay in the hospital nursery, the guard nurse "physically blocked her from exiting the room." (*Id.* ¶ 82). The Plaintiffs believe that the HMC Defendants had no intention of discharging A.F. as discussed despite having no medical reason to keep her at the hospital. (*Id.* ¶ 86).

Between 3:00 and 4:00 p.m., Defendant Lopez-Heagy, who the Plaintiffs believe to have been summoned by the HMC Defendants, arrived to "conduct an investigation." (*Id.* ¶¶ 87-91). According to the Plaintiffs, the HMC Defendants intended that Lopez-Heagy would either persuade Mrs. Ferris to comply with their demands or take custody of the child. (*Id.* ¶ 88). When Mrs. Ferris asked to see the allegations against her, Lopez-Heagy stated that it was against the law to disclose the allegations. (*Id.* ¶¶ 93-95). Lopez-Heagy threatened to "call the police and . . . take custody of the baby" if Mrs. Ferris did not cooperate. (*Id.* ¶¶ 97-98). Lopez-Heagy then stated that Mrs. Ferris had refused to provide medical treatment for A.F., specifically a Vitamin K shot; Mrs. Ferris contends that she did not refuse a Vitamin K shot. (*Id.* ¶¶ 99-101). Mrs. Ferris was not otherwise advised of which medical treatment she had purportedly refused. (*Id.* ¶ 100). Several times, when Mrs. Ferris would answer a question, Lopez-Heagy and the HMC Defendants

would leave the room to "talk." (*Id.* ¶¶ 105-06). The Plaintiffs believe that these "talks" were about the perceived need to take custody of A.F. (*Id.* ¶ 107).

When Mr. Ferris left the hospital to care for the couple's other children, Lopez-Heagy approached Mrs. Ferris and stated that if she did not agree to all of the hospital's procedures, the police would take custody of A.F. (*Id.* ¶¶ 129-30). Defendant Mallis asked to check A.F.'s white blood count, and Mrs. Ferris agreed to this procedure. (*Id.* ¶¶ 114-15). HMC staff then stated that they needed to give A.F. a Hepatitis B shot, and Mrs. Ferris refused, asking them to first test her or the baby for Hepatitis B. (*Id.* ¶¶ 117-19). The staff agreed to first test Mrs. Ferris, but then stated that because she had checked out of the hospital, they could not test her. (*Id.* ¶¶ 119-20). When Mrs. Ferris offered to have the test done elsewhere, Lopez-Heagy stated that leaving the hospital would be considered abandonment and the police would take immediate custody of A.F. (*Id.* ¶ 122).

Lopez-Heagy then inquired whether any religious beliefs had motivated the Plaintiffs' decision to refuse necessary medical treatment for A.F. (*Id.* ¶ 126). Mrs. Ferris stated that she had not refused treatment, with the exception of the Hepatitis B shot, and that refusal of that shot was religiously motivated; she stated that she did not want to discuss her faith further until her husband returned. (*Id.* ¶ 128). Lopez-Heagy stated that if Mrs. Ferris would not talk to her and agree to the terms

of a safety plan, the police would take immediate custody of A.F. (*Id.* ¶¶ 129-30).

When Mrs. Ferris asked to review a copy of the plan, she was informed that "they"

had not yet written the plan and that the hospital staff were working on a list of

procedures for A.F. (*Id.* ¶¶ 132-34). Lopez-Heagy told Mrs. Ferris that if she did

not consent to the safety plan and agree to "whatever the hospital wanted," she

would lose custody of her newborn child. (*Id.* ¶ 134).

Mrs. Ferris asked to first discuss the plan with Mr. Ferris upon his return.

(*Id.* ¶ 135-36). Lopez-Heagy responded that she was "not waiting any longer." (*Id.*

¶ 137). She stated that if Mr. Ferris returned by the time the plan was drafted, he

could review it, but "otherwise, if you don't sign the safety plan, I'm calling the

police and having them take custody of the baby." (*Id.*). Lopez-Heagy then left the

room and began collaborating with the HMC Defendants to draft the desired

treatment and safety plan. (*Id.* ¶¶ 138-39). According to the Plaintiffs, the HMC

Defendants participated in the development of the safety plan and were working

with Lopez-Heagy to implement the safety plan. (*Id.* ¶¶ 140-41).

Lopez-Heagy then contacted Derry Township Police Officer Rian Bell and

advised him of the situation. Officer Bell issued an emergency custody order,

stating that "there are reasonable grounds to believe the child is suffering from

illness or injury, or is in imminent danger from her surroundings, and that her

removal is necessary."(*Id.* ¶¶ 142-44). When Lopez-Heagy advised Mrs. Ferris that they were now taking custody of A.F. as a result of her refusal to sign the safety plan, Mrs. Ferris stated that she had not seen the plan and asked for a pen. (*Id.* ¶¶ 148-49). Lopez-Heagy advised that "[t]hat window has closed." (*Id.* ¶ 150). Officer Bell directed Mrs. Ferris to hand A.F. to a nurse, and HMC Defendant Nurse Jane Doe took A.F. from Mrs. Ferris. (*Id.* ¶¶ 154-55).

The police then escorted Mr. and Mrs. Ferris from the premises, having encountered Mr. Ferris entering the hospital while escorting Mrs. Ferris out alone. (*Id.* ¶¶ 131-133). Mr. and Mrs. Ferris spent the night sleeping in their car in a parking lot across the road from HMC. (*Id.* ¶ 136). Plaintiffs assert that "almost none" of the procedures which hospital staff described as medically necessary were actually performed. (*Id.* ¶ 154).

The following day, the Dauphin County Court of Common Pleas granted Lopez-Heagy's dependency petition, placing A.F. in custody of Dauphin County CYS. At a shelter care hearing that afternoon, the court returned custody to Mr. and Mrs. Ferris. (*Id.* ¶ 140). At a dependency adjudication on July 7, 2010, the court dismissed the case and returned fully physical and legal custody to Mr. and Mrs. Ferris. (*Id.* ¶¶ 155-156).

Mr. and Mrs. Ferris, individually and on behalf of their daughter, A.F.,

commenced this action with the filing of a four-count Complaint (doc. 1) on March

9, 2012. Following our ruling on the HMC Defendants' first Motion to Dismiss

which dismissed the Plaintiffs' claims against the HMC Defendants, the Plaintiffs

filed an Amended Complaint (doc. 46) on September 12, 2012. The HMC

Defendants filed a Motion to Dismiss the Amended Complaint (doc. 48) on

September 26, 2012, contending that despite ample revisions to their pleading, the

Plaintiffs have nonetheless failed to state constitutional claims against them. The

Motion has been fully briefed (docs. 62, 70) and is ripe for review.

## IV.   DISCUSSION

Our discussion here is limited to the constitutional claims renewed against

the HMC Defendants in the Plaintiffs' Amended Complaint. The Plaintiffs claim

procedural due process violations (Count I), arguing that no emergency or other

circumstance justified removal of Plaintiff A.F. from her parents' custody, and

Fourth Amendment violations (Count II), contending that the removal of A.F. from

her parents' custody was unreasonable. The HMC Defendants contend that the

Plaintiffs have failed to state a claim on both counts. First, the Defendants assert

that they are not state actors subject to Section 1983 liability. Second, the

Defendants argue they are entitled to both  qualified and statutory immunity and

that, in any event, the Plaintiffs' Fourteenth Amendment claim against the HMC

Defendants is time-barred. We address each of these arguments *seriatim*.

### A.     Section 1983 Liability

The Plaintiffs submit two theories of state actor liability: first, the Plaintiffs assert that HMC is a "state institution and federal fund recipient," citing to the fact that the words "Penn State" appear in its name, and second, the Plaintiffs argue that the HMC Defendants jointly participated in a prohibited action with state actors, namely the Officer Defendants and Defendant Lopez-Heagy, citing to the Supreme Court's decision in *United States v. Price*, 383 U.S. 787 (1966). We take these contentions in turn.

With respect to their first contention, that the HMC itself is a state actor, the Plaintiffs rely on the single and conclusory allegation in their Amended Complaint that HMC is a "state institution and federal fund recipient." (Doc. 46, ¶ 7). They contend that the HMC states in its responsive papers that its name is "*Penn State* Hershey Medical Center" (doc. 60, p. 4 (emphasis added)), thus giving rise to state actor liability. These allegations, however, are insufficient in and of themselves to permit Section 1983 liability. *See, e.g.*, *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638-39, 641 (3d Cir. 1995) (public funding and performance of function that serves the public is insufficient basis to subject private township first aid squad to Section 1983 liability). The Plaintiffs have established no factual basis from which

we might conclude either directly or inferentially that the HMC Defendants are state actors.

We turn then to the Plaintiffs' second argument—that the HMC Defendants jointly participated in a constitutional violation with state actors. In cases where a defendant is not a state or municipal officer, "we must still address whether their activity can nevertheless be deemed to be under color of law." *Groman*, 47 F.3d at 638. The Supreme Court has described joint participation liability as follows:

> [T]o act 'under color of' state law for Section 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions.

*See, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980) (holding that where private parties in an action before a judge bribed the judge, they were acting in joint participation with a state officer and were thus subject to Section 1983 liability). The Third Circuit has adopted this rationale, noting that the test "requires more than joint action, but rather requires that the private actor at least be 'a willful participant in joint activity with the State or its agents." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195 (3d Cir. 2005) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)).

The Amended Complaint contains several new facts, many of which are relevant to our analysis here. The Plaintiffs allege that the HMC Defendants collaborated and conferred with Lopez-Heagy, a state actor, in creating the safety and treatment plans and ultimately removing Plaintiff A.F. from her parents' custody, that the HMC Defendants physically blocked Mrs. Ferris from exiting the room in collaboration with the social worker, that the HMC Defendants placed a "guard nurse" in Mrs. Ferris's room to keep her from leaving in order to allow the HMC Defendants and Lopez-Heagy to finalize their plans, and that Defendant Nurse Jane Doe took physical custody of Plaintiff A.F. at the direction of Officer Bell. The Plaintiffs aver that the HMC Defendants knew and intended their actions to result in Mrs. Ferris either agreeing to the suggested medical procedures or the social worker taking custody of the minor Plaintiff. The Plaintiffs contend that the HMC Defendants' actions were not motivated by concern for A.F.'s health but instead by their frustration with Mrs. Ferris and her desire to avoid unnecessary medical treatment for her newborn daughter.

Under the standards of review governing a Rule 12(b)(6) motion, and taking as we must all factual allegations to be true, the Amended Complaint contains sufficient factual matter from which we could conclude that the HMC Defendants acted in joint and willing participation with the social worker, who is indisputably

14

a state actor. The allegations of the Amended Complaint establish that the HMC

Defendants conferred and negotiated with Lopez-Heagy and, in essence, used her

as a vehicle to ultimately remove A.F. from her parents' custody and complete the

HMC Defendants' desired medical procedures. We conclude, pursuant to *Harvey v.*

*Plains Twp.*, that the Plaintiffs have established that the HMC Defendants are

subject to Section 1983 liability.

### B.     Constitutional Claims

The Plaintiffs contend that the HMC Defendants have violated their Fourth

Amendment rights by committing an unreasonable seizure of minor Plaintiff A.F.,

through collaborative efforts with Defendant Lopez-Heagy, and further violated

their Fourteenth Amendment rights by removing A.F. from her parents' custody

without emergency circumstances justifying such deprivation. The HMC

Defendants assert two conflated defenses: that the Plaintiffs have failed to

demonstrate that the Defendants caused a constitutional violation and that they are,

in any event, entitled to qualified immunity.

In our analysis, we must query first whether a constitutional violation

occurred before addressing issues of immunity. In *Miller v. City of Philadelphia*,

174 F.3d 368 (3d Cir. 1999), the Third Circuit explained that the proper approach

is "to ascertain whether a constitutional violation has been alleged before

determining if qualified immunity is available." *Id.* at 374 (emphasis in original).

Thus, we first consider whether the Plaintiffs have alleged a constitutional

violation before examining the viability of the Defendant's immunity arguments.

The HMC Defendants offer little argument with respect to the merits of the

alleged constitutional violations themselves, and to the extent that merits argument

is offered, it is largely conflated with their qualified immunity reasonableness

contentions. With respect to the Plaintiffs' Fourteenth Amendment claim, the

Defendants offer the additional defense that said claim is time-barred by the two-

year statute of limitations applicable to Section 1983 claims. We will address the

claims in the order they appear in the Amended Complaint, beginning first with the

Plaintiffs' Fourteenth Amendment claim.

### 1.      Fourteenth Amendment

The Third Circuit has succinctly articulated the standard for review of

Fourteenth Amendment due process claims:

> The Fourteenth Amendment prohibits state action which
> "deprive[s] any person of life, liberty, or property, without
> due process of law." To enable individuals to enforce
> these rights, Congress enacted § 1983 as a federal cause of
> action against deprivation of any rights, privileges, or
> immunities secured by the Constitution or laws of the
> United States. To state a § 1983 claim, Plaintiffs must
> demonstrate that Defendants, acting under color of state
> law, deprived Plaintiffs of a right secured by the
> Constitution or the laws of the United States . . . .

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 Fed. Appx. 135, 2010 U.S. App. LEXIS 13485, 2010 WL 2600683, *4 (3d Cir. June 30, 2010). To survive a motion to dismiss, a procedural due process claim must allege facts which establish that "(1) there has been a deprivation of liberty or property in the constitutional sense; and (2) the procedures used by the state to effect this deprivation were constitutionally inadequate." *Callahan v. Lancaster-Lebanon Intermediate Unit 13*, 880 F. Supp. 319, 332 (E.D. Pa. Dec. 5, 1994). It has long been held that the Constitution protects a parent's fundamental liberty interest in the care, custody and management of his or her children, *Lehr v. Robertson*, 463 U.S. 248, 258 (1983), and this is precisely the liberty interest which Plaintiffs allege the HMC Defendants violated by effecting the removal of A.F. from her parents absent emergency circumstances, court order, or parental consent.

The Plaintiffs concede that the HMC Defendants did not themselves remove A.F. from her parents' custody in violation of their rights to procedural due process. Instead, noting the collaborative efforts and discussions between the HMC Defendants and the social worker who ultimately removed the minor Plaintiff from her parents' custody, the Plaintiffs cite to *Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000), for the proposition that one who sets in motion a chain of events which he knows or reasonably should know will likely cause a constitutional

17

violation is subject to Section 1983 liability even if he does not directly accomplish the violation himself.  In *Brokaw*, the defendants, an aunt and grandfather to two children, knowingly made false accusations of child abuse, ultimately resulting in the seizure of the children from their parents' home. *Id.* at 1006-08. The defendants argued that "merely filing a report of child neglect with a state actor, even if false, is insufficient to create liability under Section 1983." *Id.* at 1016. The court agreed, but noted that the complaint alleged much more, including that a conspiratorial agreement existed between the family members and the state official and that the family members intended to deprive the parents of custody of the child. *Id.* Such conspiracy and collaboration rendered the family members subject to Section 1983 liability. *Id.*

The Third Circuit has not yet ruled on whether the "setting in motion" theory of liability is applicable in Section 1983 actions, *see Burnsworth v. P.C. Lab.*, 364 Fed. Appx. 772, 775 (3d Cir. 2010), although it has recognized that numerous other Circuit Courts of Appeals, like the *Brokaw* court, have adopted the standard. *Id.* (citing *Morris v. Dearborne*, 181 F.3d 657, 672 (5th Cir. 1999); *Sales v. Grant*, 158 F.3d 768, 776 (4th Cir. 1998); *Waddell v. Forney*, 108 F.3d 889, 894 (8th Cir. 1997); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560-61 (1st Cir. 1989); *Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988); *Arnold v. Int'l Bus.*

*Machines Corp.*, 627F.2d 1350, 1355 (9th Cir. 1981)). This standard has twice

been applied in Section 1983 actions in this District. *See Wallace v. Powell*, 2012

U.S. Dist. LEXIS 91886, *61-63 (M.D. Pa. July 3, 2012); *Pilchesky v. Miller*, 2006

U.S. Dist. LEXIS 73681, *13-14 (M.D. Pa. Oct. 10, 2006).

We find the logic of the Circuits which have adopted the setting in motion

standard to be persuasive and sound and will apply their holdings here. *Brokaw* in

particular presents a compelling analogy, in that both *Brokaw* and the instant case

involve persons collaborating with state actors to effect the unwarranted removal

of a child. According to the Plaintiffs, the HMC Defendants collaborated with

social worker Lopez-Heagy with the intent that she take custody of Plaintiff A.F.,

knowing that A.F. was not in danger and that the only medical procedure refused

was medically unnecessary and refused only for religious reasons. The Amended

Complaint thus establishes that the HMC Defendants knowingly set into motion

and participated in a chain of events intending that a constitutional violation,

namely the improper removal of A.F. from her parents' custody, would occur.

These allegations are sufficient to subject the HMC Defendants to Section 1983

liability for a Fourteenth Amendment claim.

As a final matter, the HMC Defendants contend that the Plaintiffs'

Fourteenth Amendment claim is time barred because it was raised for the first time

in the Plaintiffs' Amended Complaint, which the Plaintiffs concede was filed outside of the two-year limitations period applicable to Section 1983 claims. (Doc. 52, pp. 22-23). However, Federal Rule of Civil Procedure 15(c) permits an amendment to a pleading to relate back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has interpreted this language to mean that relation back is inappropriate only if the amended pleading "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The Defendants have not replied to the relation back argument.

In our view, the facts that support the Plaintiffs' newly raised Fourteenth Amendment claim are identical in time, place, and context with those originally asserted in the first Complaint in support of the Plaintiffs' Fourth Amendment claim. The Fourteenth Amendment claim faults the HMC Defendants for the same conduct identified in the original Complaint's Fourth Amendment claim, the circumstances surrounding the improper removal of A.F. from her parents' custody, and we conclude, consistent with Rule 15(c) and the cases interpreting that rule, that the Plaintiffs' Fourteenth Amendment claim is not time barred.

20

### 2.    Fourth Amendment

The Plaintiffs also assert that their constitutional rights were violated when the HMC Defendants, together with Defendant Lopez-Heagy, set in motion the unconstitutional and unreasonable seizure of their newborn daughter in violation of the Fourth Amendment. The HMC Defendants again submit no argument with respect to the merits of the Fourth Amendment claim and contend only that there was no state action and that they are entitled to qualified immunity.

In order to establish liability for an unconstitutional seizure under the Fourth Amendment, a plaintiff must establish that the defendant's actions "(1) constituted a . . . seizure within the meaning of the Fourth Amendment, and (2) were 'unreasonable' in light of surrounding circumstances." *Adkins v. Luzerne Cnty. Children & Youth Servs.*, 2005 U.S. Dist. LEXIS 19006, *23 (M.D. Pa. Sept. 2, 2005). As we acknowledged in addressing Plaintiffs' Fourteenth Amendment claim, the HMC Defendants did not themselves take custody of A.F. and place her with the county or even physically remove the minor Plaintiff from her parents' physical custody. However, with reliance on *Brokaw* and the other Circuit Court decisions adopting the setting in motion causation standard, we have concluded that the HMC Defendants are subject to Section 1983 liability for setting in motion the removal of Plaintiff A.F. from her parents' custody. It follows, then, that the

21

HMC Defendants are likewise subject to Section 1983 liability for setting in motion the unnecessary seizure of Plaintiff A.F., which is one and the same with the removal of Plaintiff A.F. from her parents' custody. We thus conclude that the Plaintiffs have stated a constitutional claim for a Fourth Amendment violation as against the HMC Defendants.

### 3.    Qualified Immunity

The HMC Defendants assert that even if the Plaintiffs have alleged a constitutionally cognizable injury, they are nonetheless entitled to qualified immunity because their actions were reasonable. The Plaintiffs respond that the actions of the HMC Defendants in making unwarranted reports to social services and effecting the removal of their newborn daughter from their custody were unreasonable and are not entitled to immunity.

The Third Circuit has succinctly set forth the standard for analyzing a qualified immunity claim:

> Determining whether a state actor is entitled to the affirmative defense of qualified immunity generally involves two inquiries: (1) do the facts alleged show that a state actor violated a constitutional right, and (2) was the constitutional right clearly established so that a reasonable person would know that the conduct was unlawful? A right is clearly established if there is "sufficient precedent at the time of the action . . . to put [the] defendant on notice that his or her conduct is constitutionally prohibited. Courts are accorded

'discretion in deciding which of the two prongs of the
qualified immunity analysis should be address first in
light of the circumstances in the particular case at hand."

*Wilson v. Zielke*, 382 Fed. Appx. 151, 152 (3d. Cir. Feb. 9, 2010) (quoting *Pearson*

*v. Callahan*, 555 U.S. 223 (2009)*; McKee v. Hart*, 436 F.3d 165, 171 (3d Cir.

2006)) (internal citations omitted).

As stated above, Plaintiffs have pled facts which, presumed true, establish a

violation of their constitutional rights, specifically the Fourth and Fourteenth

Amendments, thus answering the first element of our qualified immunity analysis

in the affirmative. The critical inquiry at this juncture, then, is whether these rights

were clearly established so that a reasonable person would know that their conduct

was unlawful. *See Wilson*, 382 Fed. Appx. at 152. A constitutional right is clearly

established if the contours of the right str sufficiently clear that a reasonable

official would understand that what he or she is doing violates the law. *Wilson v.*

*Layne*, 526 U.S. 603, 614-15 (1999).

It has long been held that the Constitution protects a parent's fundamental

due process liberty interest in the care, custody and management of his or her

children, *Lehr v. Robertson*, 463 U.S. 248, 258 (1983), and that these rights can be

infringed upon only in the face of objectively reasonable evidence that the child is

in danger. *See Adkins*, 2005 U.S. Dist. LEXIS 19006 at *16-17. Likewise, courts

have long held that a Fourth Amendment seizure of a child is unreasonable where there exist no "emergency circumstances which pose an immediate threat to the safety of [the] child" or no objective evidence from which one might conclude that the child is in danger. *Id.* at *23-25. Thus, both of the constitutional rights at issue here are and have long been clearly established.

The Plaintiffs have alleged that the HMC Defendants involved child services and Lopez-Heagy not because the Plaintiffs had refused any medically necessary treatment or because there was any danger of abuse or neglect to Plaintiff A.F. but instead because the HMC Defendants were frustrated with Mrs. Ferris for withholding consent to an unnecessary medical procedure for religious reasons and for questioning the medical procedures recommended for her newborn daughter. According to the Plaintiffs, the social worker conceded that this was not a case involving abuse nor neglect, further exemplifying that the HMC Defendants actions were unreasonable. We thus cannot conclude that the HMC Defendants are entitled to qualified immunity where the rights which they have allegedly violated are so clear and long-established. We thus reject the HMC Defendants qualified immunity arguments.[1]

---

[1] Nothing in this opinion shall prohibit the HMC Defendants from revisiting their qualified immunity defense if the same is warranted on a fully-developed record at the summary judgment or trial stages.

As a final matter, the HMC Defendants assert that they are entitled to immunity pursuant to the Pennsylvania Child Protective Services Act, section 6318, which provides that in any criminal or civil proceeding, "the good faith of a person required to report pursuant to section 6311 (relating to persons required to report suspected child abuse) . . . shall be presumed." 23 PA. CONS. STAT. § 6318. The Defendants contend that this presumption of good faith requires that we dismiss all claims against them arising from the removal of Plaintiff A.F. from her parents' custody.

As we have noted above, however, the Plaintiffs have alleged that there  was no documented abuse. In fact, the Plaintiffs have alleged that there was no suspicion of abuse or concern that the child was in danger whatsoever. Instead, the Plaintiffs allege that the Defendants acted not out of concern for Plaintiff A.F.'s well being but instead were motivated by annoyance and frustration with Mr. and Mrs. Ferris. Presented with these facts, we cannot find that the HMC Defendants are entitled to immunity under the Child Protective Services Act because we cannot, at this juncture, determine that their actions were taken in good faith.

### 4.     Liability of HMC

As a final matter, HMC itself contends that it cannot be held liable for either of the alleged constitutional transgressions because the Plaintiffs have failed to

articulate an institutional policy, custom, or practice that could subject HMC to

Section 1983 liability. In *Monell v. New York City Dep't of Social Servs.*, 436 U.S.

658 (1978), the Supreme Court held that a "municipality is only liable when the

plaintiff can show that the municipality itself, by implementing a municipal policy,

regulation or decision either formally adopted or informally adopted through

custom, actually caused the alleged constitutional transgression. *Id.* at 691. The

Plaintiffs have not replied to this argument in their opposition brief, and we thus

presume they have conceded the point. Notwithstanding Plaintiffs' nonresponse,

the Amended Complaint entirely fails to establish a custom, policy, decision, or

practice of the HMC itself which justifies *Monell* liability. We thus grant the

Defendants' Motion to the extent it seeks dismissal of the HMC as a Defendant.

## V.     CONCLUSION

For all of the reasons articulated herein, we conclude that the amendments to

the Plaintiffs' Amended Complaint have remedied the deficiencies of their first

Complaint and sufficiently state facts supporting their Fourth and Fourteenth

Amendment claims against the HMC Defendants. Consistent with this opinion, we

will grant the Defendants' Motion to the limited extent it seeks dismissal of the

claims against HMC but deny the Defendants' Motion in all other respects.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.     The HMC Defendants' Motion to Dismiss (doc. 48) is

**GRANTED** in part and **DENIED** in part to the following

extents:

    a.     The Motion is **GRANTED** to the extent it seeks

       dismissal of the claims against Defendant Penn State

       Milton S. Hershey Medical Center.

    b.     The Motion is **DENIED** in all other respects.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge